**HORSESHOE ESTATES, a Wyoming partnership, Appellant (Defendant),**

**Country Club of the Big Horns, a Wyoming corporation, Richard E. Shanor, (Defendants),**

v.

**2M COMPANY, INC., Appellee (Plaintiff).**

No. 84–203.

Supreme Court of Wyoming.

Jan. 31, 1986.

---

Dan B. Riggs and E. Michael Weber of Lonabaugh & Riggs, Sheridan, for appellant.

S.B. Freeman, III of McCarty, Bormuth & Freeman, Cody and Rodd A. Hamman of Calton & Hamman, P.C., Billings, Mont., for appellee.

Before THOMAS, C.J., ROSE,* ROONEY ** and CARDINE, JJ., and GUTHRIE, J., Retired.

GUTHRIE, Justice, Retired.

2M Company, Inc. commenced these proceedings by filing its complaint and praying for the foreclosure of a mechanic's lien naming Country Club of the Big Horns, Richard E. Shanor, and Horseshoe Estates as defendants. During the course of the proceedings in this action, the trial court entered a final judgment against Country Club of the Big Horns and Richard E. Shanor, jointly and severally, in the sum of $195,113.92 as of January 10, 1984, and against Horseshoe Estates, a Wyoming partnership, foreclosing the mechanic's lien, and awarded attorney's fees in the sum of $1,500 and $292.50 previously levied by the court, along with the costs.

Neither Country Club of the Big Horns nor Richard E. Shanor has appealed, and the judgment is in full force and effect as against them. Horseshoe Estates is the sole appellant and seeks reversal of this judgment insofar as it affected Horseshoe Estates and allows foreclosure of the lien.

In questioning the propriety of this judgment and seeking its reversal, Horseshoe Estates makes the following points, which it presents for review:

"1. Is the supplier of construction materials for a golf course entitled to a money judgment against the owner of the golf

* Retired November 1, 1985.

** Retired November 30, 1985.

course property on a theory of unjust enrichment when the supplier has not shown the amount of alleged 'unjust enrichment' to the golf course owner?

"a. Is proof of work done on property, or goods delivered, competent evidence to establish an amount of unjust enrichment?

"2. Did the trial Court error [sic] in granting judgment upon the theory of unjust enrichment in the complete absence of evidence of misconduct, fault or undue advantage on the part of Appellant?

"3. Is the supplier of construction materials for a golf course entitled to foreclosure upon a materialman's lien when the lien statement fails to provide a legal description as required by W.S. § 29–1–301(b)(xii)?"

Our disposal of this matter is necessarily and properly limited to the area of the appellant's claim and the contentions which it submits to this Court.

The genesis of the dispute lies in a contract which was entered into between 2M Company, Inc. and Richard E. Shanor, as an individual, and Country Club of the Big Horns, a Wyoming corporation, which contract was executed on behalf of the corporation by Richard E. Shanor and signed by said Shanor, apparently as guarantor. This contract generally required 2M Company, Inc. to provide "all sprinkler system design services" and all the "necessary materials" for "an 18 hole golf course."

The contract describes Richard E. Shanor and Country Club of the Big Horns as "the Owner" and does not mention Horseshoe Estates which was in fact the owner of the premises upon which the sprinkler system was installed. Horseshoe Estates is a partnership consisting of Richard E. Shanor and Richard L. Shanor, his son. Richard E. Shanor conducted all the negotiations with 2M Company, Inc. and was on the property inspecting and supervising the work during the time it was being done. There is no evidence of any participation by Richard L. Shanor. The contract was prepared and submitted by Richard E. Shanor after 2M Company, Inc. had submitted a suggested form of its own. A financial statement of Richard E. Shanor and Jean E. Shanor, his wife, dated January 15, 1982, and submitted to 2M Company, Inc. in connection with the dealings herein shows him to be the owner of the Horseshoe Ranch and lists Horseshoe Estates contracts as an asset.

MEASURE OF COMPENSATION

Preliminary to a detailed discussion of the applicable measure of compensation in this contract resultant from the application of the theory of unjust enrichment, and particularly in view of appellant's contention that the proper measure of recovery in cases where labor and materials are expended for improvements on real estate is "clearly the difference between the market value of the realty before and after the improvements," an examination of the possible results of the application of such a rule will be made. These demonstrate that it could have undesirable results, possibly in this and all other such cases.

It is entirely conceivable that a partially completed golf course might reduce the value of the lands, upon which it was constructed, for agriculture or other use to which it had formerly been placed and resultant from the construction of a golf course thereon, and that until it was satisfactorily completed as such golf course, it would have no value for use as such course. If this resulted in a reduction in the value rather than enhancement, should the supplier here, because of these factors entirely beyond his control, be deprived of any compensation for the materials which he furnished? The writer thinks not.

Viewed from a contrary viewpoint, would appellant be contending here for the application of this rule if the enhancement in value of the premises, by virtue of it having created a popular and busy golf course, far exceeded the value of the materials or labor furnished? It is suggested here that this would not be the contention of the appellant if this were the case.

Myriad examples of the injustice or ridiculous result which might result from strict

adherence to such rule could easily be imagined. It is because of these possibilities that Restatement of the Law (Second) of Contracts 2d § 371 (1981) notes that the measure of recovery should be as justice requires and apparently recognizes that, this being an equitable relief, the facts and circumstances governing the cases should dictate the proper rule.

This Court has generally recognized that unjust enrichment is an equitable doctrine. *Rocky Mountain Turbines, Inc. v. 660 Syndicate, Inc.*, Wyo., 623 P.2d 758 (1981), along with *Bereman v. Bereman*, Wyo., 645 P.2d 1155 (1982), has recognized that no person should be permitted to unjustly enrich himself at the expense of someone else and that he should be required to make restitution of or for property or benefits received or retained where it is just and equitable that such restitution be made. See also 66 Am.Jur.2d, Restitution and Implied Contracts, § 3 (1973).

In *Engle v. First National Bank of Chugwater*, Wyo., 590 P.2d 826, 830 (1979), this Court, citing with approval 53 Am. Jur.2d, Mechanics' Liens, § 2 at 516–517 (1970), set out as follows:

" 'The basis for a mechanic's lien and the mechanic's lien laws lies in the principles of equity and the dictates of natural justice. Such laws are based on the equity of paying for work done or materials delivered. The principle or doctrine upon which the mechanic's lien and the mechanic's lien laws rest is stated to be the equitable principle of restitution or the prevention of unjust enrichment, and estoppel to deny a benefit. *But it appears that it is the detriment to the mechanic or materialman rather than the benefit to the landowner or other party which provides the fundamental basis for the lien, so that a lien may exist even though the value of the owner's property has not been increased.* \* \* \* ' (Footnotes omitted.)" (Emphasis added.)

■ We further find a clear and logical answer to the appellant's contention that the measure of recovery available here to 2M Company, Inc. under these facts is sole-

ly the enhancement of the value of the property upon which this machinery and effort were placed. The Supreme Court of Montana has recently considered a question of this character in the case of *Robertus v. Candee*, Mont., 670 P.2d 540, 543 (1983), when it said:

"There may be cases where the enhancement to the defendant's property will be far less than the *quantum meruit* value of the plaintiff's efforts. For example, where the improvement did not enhance the value of the property but did result in a pecuniary saving to the defendant, the enhancement measure would not reflect the unjust enrichment. Conversely, there may be cases where the value of the enhancement greatly exceeds the cost of the improvement, as in this case.

"Thus the rule has evolved that the proper measure of damages in unjust enrichment should be the *greater* of the two measures. Restatement of Law, Contracts 2d § 371 comment b; 12 Williston, Contracts § 1480." (Emphasis in original.)

We have, in this case, the agreed contract price and the contract entered into by Shanor and the Country Club of the Big Horns with 2M Company, Inc. This, standing alone, would be evidence of reasonable value of the property placed thereon. *Keneally v. Orgain*, 186 Mont. 1, 606 P.2d 127 (1980); *Bodde v. Burnham*, Mo.App., 588 S.W.2d 516 (1979). The record further reveals that neither Shanor nor the Country Club of the Big Horns had ever denied the delivery and receipt of all the materials covered in the lien claim and for which this claim was made, nor have they made any showing that the value claimed was not the reasonable or proper value. Apparently there is no complaint made on this score at all, but appellant has chosen to rest, in this area at least, on his contention that enhancement of value is the sole and only measure which can be proven to sustain this recovery, but which is not the proper measure of compensation under these authorities.

## HORSESHOE ESTATES' LIABILITY

The foundation of appellant's view that it cannot be held upon the theory of unjust enrichment and that it has no obligation to pay for, or even to return, any of the materials here supplied is that there is no showing Horseshoe Estates took advantage of 2M Company, Inc., nor was there any element of misconduct or fault. From a reading of appellant's brief and its contention of complete innocence and lack of knowledge that the partnership of Horseshoe Estates had a complete lack of involvement herein and bore no relation to 2M Company, Inc., this writer is in some way reminded of the couplet about the little man who wasn't there and who isn't there again today.

This contention is made in face of the fact that Richard E. Shanor is one of the partners, that he signed the original contract naming Country Club of the Big Horns as owner of the property, that he signed the contract as guarantor, and that he knew of, and inspected, the work being done and property being placed on the lands of Horseshoe Estates. To say that this partnership did not have complete knowledge of all these dealings and that 2M Company, Inc. dealt alone with Shanor and Country Club of the Big Horns is not reasonable. A partnership is not so ephemeral that it is a completely removed and detached entity from the partners or their activities or representations and can have no responsibility or notice of their acts, particularly when these parties, all three, are engaged in the building of a single developed unit with a common purpose. Horseshoe Estates must be said to have had notice and knowledge of Richard E. Shanor's representation, statements, acts, activities, and knowledge, § 17–13–304, W.S.1977, so that it knew 2M Company, Inc. was performing a contract and placing machinery and a sprinkler system upon partnership property, and that, even despite of said knowledge, Shanor, as such partner, made no attempt to stop or to advise 2M Company, Inc. that it was on Horseshoe Estates land where the equipment was being placed. From the facts

before recited, we cannot say that Horseshoe Estates was not guilty of some misconduct or fault, nor do we believe that such behavior would recommend itself highly to a court sitting in equity.

■ Without consideration, however, of the wrongful conduct of Horseshoe Estates, the partnership is forced to live with the rule that restitution lies for services or chattels placed upon lands which benefit another with his knowledge. *Costanzo v. Stewart*, 9 Ariz.App. 430, 453 P.2d 526, 528 (1969), citing Restatement of the Law of Restitution § 40 (1937).

■ This case represents a rather widely recognized exception to the rule, which has been promulgated in several cases, that recovery for unjust enrichment requires an element of fraud or tortious conduct on the part of the person receiving the benefit of the work or materials furnished. Other cases require, if the purpose of unjust enrichment is to be served, that when a party receives, with full knowledge, materials or services to his benefit from an innocent furnisher of such supplies, he should be accountable therefor. The case of *Gee v. Eberle*, 279 Pa.Super. 101, 420 A.2d 1050 (1980), specifically holds that in a claim for unjust enrichment, proof of wrongdoing or wrongful intent is unnecessary. That case cites with approval the case of *Roman Mosaic and Tile Co., Inc. v. Vollrath*, 226 Pa.Super. 215, 313 A.2d 305 (1973), which sets out that to recover on a claim of unjust enrichment, it must be shown that the property was wrongfully secured or *passively received.* See also *In re Brereton's Estate*, 388 Pa. 206, 130 A.2d 453 (1957). It is hard to assume a set of facts which would more clearly make this rule applicable in the instant case.

In support of appellant's contention that in order to recover under this theory it must be shown there was some misconduct or fault, *Commercial Fixtures and Furnishings, Inc. v. Adams*, Utah, 564 P.2d 773 (1977), is cited. This case is not factually applicable to our situation and does not hold as the appellant asserts, the holding

being not that broad. It merely enunciates a narrow rule that the "mere fact" some third party may benefit does not sustain a claim for unjust enrichment. It is to be noted that 2M Company, Inc. does not assert its claim on this sole basis but on an entirely different set of facts. It is observed that this case involved a divided court and that the dissent may well be considered more persuasive and impressive than the views of the majority.[1]

## LAND DESCRIPTION

■ In considering appellant's claim that the lien is invalid and unenforceable because there was no adequate description of the property contained in the lien statement, we are bound to consider this contention in light of the earlier expressed philosophy of this Court, which has always been that we are reluctant to hold a lien invalid because of a loose description. We will be liberal in upholding such liens in the event no third-party interest has arisen. *Mawson-Peterson Lumber Co. v. Sprinkle*, 59 Wyo. 334, 140 P.2d 588, 147 A.L.R. 1089 (1943).

We held in *Engle v. First National Bank of Chugwater*, supra, where the lien statement described an entire ranch rather than the one-acre tract upon which a house was placed, it would not vitiate the lien where there is no allegation that the parties were deceived or prejudiced as the result of said description. Generally, when there is no question of innocent parties' rights being affected by a deficient or loose description, the courts have been most liberal in upholding the validity of lien statements. An excellent illustration of this appears in the cases cited in Annot., 52 A.L.R.2d 12, 48–53 (1957). Significantly, appellant does not assert a claim of prejudice, does not contend that it was misled, and does not claim that it does not know the identity of the lands upon which this lien has been asserted.

■ The burden was upon the appellant, Horseshoe Estates, to establish that it had been so misled. *Kirby Building Systems, Inc. v. Independence Partnership No. One*, Wyo., 634 P.2d 342 (1981).

■ Absent any such claim of prejudice or being misled in any manner by the description which appeared in the lien statement, we must hold that it was sufficient.

## PREJUDGMENT INTEREST

In addition to the errors which were asserted and set out earlier herein, appellant claims there is reversible error by virtue of the trial court's allowance of prejudgment interest. It is asserted that in an unjust enrichment case, this is manifest error. Prejudgment interest was included therein and computed by virtue and under the terms of the contract provisions.

In support of this proposition, appellant asserts that this was an unliquidated claim resting upon two propositions; i.e., first, that there is no evidence of the before and after value of the property and, secondly, that the right of restitution did not exist until the judgment was entered. The first such asserted proposition finds its answer in the preceding portion of this opinion when the measure of recovery was discussed. Insofar as the Country Club of the Big Horns and Shanor are concerned, this was a liquidated claim because it was and is susceptible of calculation by reference to the contract and the invoices. *Laramie Rivers Company v. Pioneer Canal Company*, Wyo., 565 P.2d 1241 (1977); *Rissler & McMurry Company v. Atlantic Richfield Company*, Wyo., 559 P.2d 25 (1977). Appellant concedes that this is a liquidated claim as against the other defendants. Since it also had the same knowledge as the named parties, it must also be charged with notice of this amount.

1. The writer attaches some significance to the fact that the authority cited in support of this proposition, i.e., 66 Am.Jur.2d, Restitution and Implied Contracts, § 16 (1973), sets out that this is not applicable in every case and cites *Costan-*

*zo v. Stewart*, supra, illustrating the exception. This also supplies an inference that the Utah court would recognize such an exception in a case with this factual situation.

If we adhere to the view that it is the detriment to the lien claimant which is the basis of the lien law, *Engle v. First National Bank of Chugwater,* supra, we find it difficult to say that when a lien claimant has furnished large amounts of equipment and installed it upon the lands of the appellant his detriment will not be further exacerbated by refusing to allow interest. Restatement of the Law of Restitution § 156 comment c (1937), suggests that interest should be paid if it is required to avoid injustice. In comment b to this section, it is stated:

" * * * Ordinarily if the sum due is sufficiently definite so that the transferee would have reason to know the amount he should pay, it would be unjust not to allow interest from the time when it should have been paid, as where an agent who has received money on his principal's account can fix a minimum sum which on a balance of accounting must be due the principal, although the precise sum cannot be ascertained. (Compare Restatement of Contracts, § 337)."

This claim was certainly determinable.

■ In this case, we have a claimant who has furnished a large amount of equipment and installed or placed the same upon these premises. His work was undertaken relying upon the misrepresentations or actions of the Country Club of the Big Horns and Shanor. We have heretofore mentioned that the appellant here, as a copartnership, is charged with knowledge of, and is considered to have complete notice of, these dealings and sat silently by. It is then an injustice to deprive this claimant of interest for the amount of the materials furnished and placed upon these premises during this period. It is perfectly blameless and has been placed in this situation by virtue of the affirmative acts of Shanor and Country Club of the Big Horns and the passive acceptance by the appellant. These facts as set out demonstrate that interest should be allowed to avoid an injustice.

The sole case authority which appellant cites for its position is *Midland Diesel Service & Engine Company v. Sivertson,* N.D., 307 N.W.2d 555 (1981), and we find that case so factually different that we are unable to apply the suggested rule for which the appellant contends. It is our further observation that insofar as interest for appellant is concerned, the court only held that the trial court had not abused its discretion in refusing to allow interest when it was discretionary by statute.

We find no reversible error in the areas of which appellant complains.

The judgment is affirmed.